SUCCESSION OF DAMIÁN DEL MORAL Y NADAL, ETC., Plaintiffs and Appellees, *v.* THE MAYAGÜEZ LIGHT, POWER & ICE CO., Defendant and Appellant.

No. 7328.   Argued November 15, 1938.—Decided January 26, 1939.

*J. Alemañy Sosa*, for appellant; *Pascasio Fajardo Martínez*, for appellees.

Mr. Justice Travieso delivered the opinion of the Court.

The complainants allege that on March 9, 1927, the now deceased Mr. Damián del Moral y Nadal and the defendant entered into the following contract:

"Granting of a Voluntary Easement for the Passage of an Electrical Transmission Line

"Mr. Damián del Moral, single, of legal age, property owner and resident of Mayagüez, P. R., who hereinafter shall be called the party of the first part, and The Mayagüez Light, Power & Ice Company, Inc., which is a corporation organized according to the laws of Puerto Rico with its principal office in the city of Mayagüez, where it has

an electric power house, and which shall be hereinafter called the party of the second part, represented by its manager, Mr. Rodolfo Vera, hereby agree to the following:

"That the party of the first part is the owner of a farm in the Ward Sábalos, in the jurisdiction of Mayagüez, P. R., having an area of over 60 *cuerdas*. And as such and for the consideration of one dollar, he grants and imposes on the said property an easement for the passing of an electrical transmission line in and across the said property, authorizing the engineers of the party of the second part and their employees to enter and carry out on said property any work which may be necessary for the installation of the said electrical transmission line, the party of the second part binding itself to protect the crops that may exist on said property in order to avoid any undue damages to said crops, and the party of the second part binding itself to give compensation for any damages that may be caused to the crops of said farm as a consequence of the installation and maintenance of the said electrical transmission line, and also binding itself to duly compensate the personal damages that may be caused by any accident due to the electric current or in any other manner as a result of the installation of said transmission line. The party of the first part to this contract also agrees to authorize the party of the second part and its employees to enter upon said farm to repair and maintain said line once its contruction is terminated.

"The easement for the passage of an electrical transmission line which is hereby authorized and constituted shall endure for whatever period of time may be necessary to maintain said line installed on the said property.

"The Mayagüez Light, Power & Ice Co., Inc., binds itself to remove the post from the place in which it is to be placed as soon as Mr. Del Moral shall desire to lower the land on which said post is to be placed, in order to level it, and shall place it in any other spot chosen by Mr. Del Moral in the same direction it is now.

"The Mayagüez Light, Power & Ice Co., Inc., through its legal representative, accepts each and all of the conditions imposed by the present contract hereby binding itself to strictly comply with the same.

"This contract shall be made into a public deed whenever either of the parties shall so desire.

"Signed in Mayagüez, P. R., this 9th day of March, 1927.

"(Sd.)  Rodolfo Vera.          (Sd.)  D. del Moral.
"(Sd.)  Adolfo Torrellas,
"Witness."

That according to the terms of said contract and shortly after the same was executed, the defendant constructed on the property which now belongs to the complainants, a steel tower "a few meters from the boundary line of the insular road which goes from Mayagüez to San Germán, installing thereon wires for the transmission of electric current which cross said property from East to West . . ."; and that the defendant committed a breach of said contract, first, in not paying for the right of easement the dollar mentioned in the second paragraph of the contract, and in the second place, in refusing to remove the tower from the place in which it was constructed toward the West in the same direction. In the prayer the complainants request that the contract be declared null and rescinded; that the defendant be given a reasonable time to take down the tower; and that the complainants be awarded costs and attorney's fees.

Four days after the bill of complaint was filed, the defendant deposited in court one dollar and demurred to the complaint alleging that it does not set forth sufficient facts to constitute a good cause of action. The defendant also answered and filed a cross-complaint accepting some of the facts and denying the fact that the payment of the one dollar agreed upon as the price of the easement had to be previously made; they denied that the current transmission line was used exclusively for the benefit of the defendant and allege that it was used for the benefit of the public in general; they denied that they have not paid or that in any manner they have been required to pay the dollar stipulated as the price of the easement; that the deceased from whom the complainants inherited had no necessity to level the land on his farm. And as special defenses they alleged that they have refused and that they refuse to change the tower from its present location because the spot chosen by the deceased from whom the complainants inherited is not on the same line and that the only reason for the attitude of the complainants in demanding that the tower be changed is the fact that the

defendant has refused to give them free electric current for use in the home of the complainants.

In the cross-complaint the defendant prays that the complainants be ordered to execute the corresponding public deed in favor of the defendant-corporation, and if they should refuse to do so, that the deed be executed by the marshal in their stead.

With these allegations the parties went to trial and the judgment object of this appeal was rendered. In it the complaint was sustained and as a consequence the defendant was ordered to remove the steel tower from the place where it actually is and to place it in the same direction and in straight line toward the west, in the place which was shown to the court during its view of the premises, with the additional holding that if the defendant does not proceed to carry out the terms of the judgment, then the contract of March 9, 1927, will be considered rescinded and null and without any legal force or effect, and, therefore, the property will be free of the easement constituted by said contract, and costs were awarded to the plaintiff.

The first alleged error states as follows:

"1. The court erred in declaring that there was no consideration for the contract constituting the easement, entered into between the deceased from whom the appellees inherited and the appellant company, due to the non-payment of the one dollar which was stipulated as the price of said easement, after the court admitted the deposit made of said sum and also that there existed in said contract other obligations which constituted sufficient consideration for the same."

The lower court in its opinion says:

"This court reaches the following conclusions:

"That there was no consideration in the contract in question, since the dollar stipulated as the price of the easement was not paid and since there does not exist any other evidence which may show directly or indirectly to this court that there was other consideration for the contract. The fact that in the contract it is stated that the defendant would be liable for the damages that the installation of the tower might cause to the farm and also that said defendant would

give compensation for any personal damages which might be caused by the installation is not such consideration as would uphold the contract in any manner. The fact that the installation of the electrical transmission line was for the benefit of the public in general is not either sufficient consideration to give the contract any legal effect.''·

We agree with the lower court in that the defendant did not pay the complainants the dollar stipulated as the price of the easement, but we do not agree with the conclusion that from the facts of the case there does not appear that any other good and sufficient consideration exist to uphold the validity and efficacy of the contract between the parties.

In the first place, by the express terms of the contract the defendant bound itself ''to compensate all the damages that might be caused to the crops of the said farm as consequence of the installation and maintenance of the said electrical transmission line, also binding itself to compensate in due form any personal damages occasioned by any accident caused by the electric current or in any other manner as a result of the installation of said transmission line. . . .'' This, according to the case of *Velázquez* v. *Municipality of Las Piedras*, 36 P.R.R. 773, constitutes a good and sufficient consideration for a contract:

''The complaint alleges that the consideration of one (1) dollar specified in the deed was never in fact received by plaintiff. But it also alleges that the *alcalde* in his official capacity as representative of the municipality agreed to compensate plaintiff by payment of a reasonable sum sufficient to cover any damage suffered by the property in question as the result of the construction of the aqueduct. That promise was a good and sufficient consideration for the contract.''

In the second place, from the allegations of the complaint itself, sustained by the evidence, it appears that immediately after the contract of March 9, 1927, was signed, the defendant corporation, with the consent of the other contracting party and without it insisting on the previous payment of the dollar stipulated as the nominal price of the easement, entered

into the farm of the complainants and erected thereon a steel tower on which the wires to transmit electric current were installed and which were necessary for giving the public light and power; and that from that date until April 23, 1934, when the complaint in this case was filed, the defendant has been in possession and use of the easement, using said tower and transmission line in the service of the public. The correspondence between the complainants' grantor and the defendant during the months of July, August and September, 1933, that is, more than six years after the tower and the transmission line were installed, is conclusive evidence of the intention of Mr. Damián del Moral to confirm the contract of March 9, 1927. In all that correspondence the changing of the steel tower from the place where it was originally installed to another place designated by Mr. Del Moral is discussed and no mention whatsoever is made in regard to the nonpayment of the amount of one dollar. The only discussion between the parties was whether the place designated by Del Moral for the new location of the tower was in the same direction as the place where the tower was actually situated, as stipulated in the contract.

After a serious study of the allegations and of the facts in the case we are of the opinion that there was a sufficient consideration to uphold the existence and validity of the contract. In the work Restatement of the Law, Contracts (American Law Institute), page 110, the following doctrine which we consider applicable to the present case is set forth, as follows:

"Sec. 90.—PROMISE REASONABLY INDUCING DEFINITE AND SUBSTANTIAL ACTION.

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

See also: Williston on Contracts, vol. I, sec. 140, page 503, and cases cited under note number 3; and 115 A.L.R., note on page 152.

The lower court appears to have used the above cited doctrine in rendering the judgment appealed from. The complainants, after alleging that the payment of the dollar stipulate had not been made, and that the defendant-company had violated the terms of the contract in refusing to change the tower to the new site designated by them, prayed the court to declare the contract rescinded and null as a result of the said alleged violations of its clauses. The court did not grant the prayer of rescission and nullity of the contract. And without doubt, thinking that the only way to avoid injustice was by a performance of the agreement, limited itself to ordering the defendant to specifically perform its obligation of removing the tower, from the place where it was originally installed to the place designated by the complainants. In refusing to declare the contract granting the easement, rescinded and null and in ordering its specific performance by the defendant, the lower court accepted the existence and validity of the contract. And in not appealing from said holding the complainants have also accepted it.

According to the doctrine which we have just cited, we are of the opinion that taking the circumstances of the case into consideration, it would be unjust to decree the rescission and nullity of the contract. By executing the contract and permitting the defendant to enter upon the farm and install the tower and the transmission line, without previously demanding the payment of a dollar, the deceased, from whom the complainants inherited, induced the defendant to act in a definite and substantial manner investing its money in the construction of its transmission lines in the direction which they now follow and assuming the obligation to give the public through those lines electric light and power. We hold that the acts of the defendant, induced by the promise and by the behaviour of the complainants' grantor is a considera-

tion sufficient to uphold the validity of the contract and the existence of the easement. See 13 C. J. sec. 150 C, page 315; *Hernández* v. *Fernández,* 17 P.R.R. 111; *Martínez* v. *Cerezo,* 25 P.R.R. 659; *Meléndez* v. *Morales,* 43 P.R.R. 774.

We agree with the appellant that the complaint does not set forth sufficient facts to constitute a good cause of action of rescission for lack of consideration in the contract. The only damage which the complainants allege is the fact that they have not received the dollar stipulated by the parties as the consideration for the granting of the easement. In permitting the defendant to install the tower and the transmission line the complainants' grantor waived the condition that the payment should be made before the taking of possession and the right of the easement exercised, even though he may not have waived his right to claim the payment of the stipulated amount.

The complaint does not allege either sufficient facts to constitute a cause of action for nullity of the contract. It alleges that the defendant carried out the work of installing the tower and the transmission lines and used the easement right granted to it by the contract for seven years before the complaint was filed, without alleging that during all that lapse of time the complainants demanded the payment of the dollar as a condition precedent to the use and enjoyment of the easement. It is also alleged that the complainants often requested the defendant to change the tower from the place where it is at present situated to another place designated by the complainants. All these facts alleged by the complainants themselves constitute, in our opinion, a ratification of the contract and a waiver of the right to sue for nullity of contract according to the provisions of section 1261 of the Civil Code (1930 ed.).

In his third alleged error the appellant says that:

"3. The district court erred in declaring that the place designated by the complainants' grantor is in the same direction as the

place where the tower is installed, and that the refusal of the appellant to change the tower to the place designated constitutes a breach of the contract.''

According to the expert testimony offered by the defendant the tower is in a straight line between two others which are outside of the complainants' farm, 153 feet away from one and 304 feet away from the other. The place designated by the appellees to the appellant as the new place for the tower is, in regard to the other two towers situated outside of the farm, six feet away from one and 451 feet from the other. Luis Gandía, Jr., chief engineer of the defendant, in his direct testimony stated as follows:

''Q. In case that tower were moved toward the tower No. 1 on the property of Mr. Rosado, or that is, to the boundary of the lands of Mr. Del Moral and Mr. Rosado, or that is, to this point here, on Exhibit J of the complaint which is marked two meters away from number one, would the tower be in the same course in which it now is?

''A. No, sir, it cannot.

''Q. What effect would it have on the line?

''A. In changing that tower from its place to two meters from No. 1, the total distance would be 451 feet. That is what would remain.

''Q. That would be between one tower and another?

''A. Yes, sir.

''Q. From which tower?

''A. From the tower which is on the road No. 3, and that would place two towers six feet away from each other, and 451 feet is too large a suspension for a current of 22,000 volts according to the electric code.

''Q. Would it be possible to render the service to which the tower on Mr. Del Moral's farm is dedicated as a part of the line of electric current which goes to the towns of Hormigueros, Cabo Rojo, San Germán, Lajas and Sabana Grande, if that tower were placed six feet away from Mr. Rosado's tower?

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

''Q. The question is, would the tower of The Mayagüez Light continue to give the service that it is giving or that it would give as

a part of the line of electric current, if it were placed six feet away from Mr. Rosado's tower?

"A. With difficulty, as the line would be changed.

"Q. Could the line continue to be used?

"A. No, sir, it could not."

On cross-examination he answered:

"Q. Tell me something, you say that the post, or that is, the tower cannot be moved from where it is towards the west?

"A. It can.

"Q. It can be moved?

"A. Yes, sir, it can easily be moved to the place on boundary of Mr. Rosado.

"Q. To the place designated by the deceased Mr. Damián del Moral?

"A. To that place it cannot.

"Q. Why not?

"A. Because, as I said, that would leave a suspension of 453 feet between towers, which is not permitted by the electric codes. The thing is, first, that the wires would have a suspension which would be too long and, second, that the three wires would be closing the circuit, because when you cross a road, there are certain standards for the public safety which call for a great deal of care."

From the evidence it also appears that the defendant was always willing to comply with the wish of the complainants' grantor. Rodolfo Vera, the manager of the appellant, answered to questions of his attorney, as follows:

"Q. To what place, what spot, was the company willing to carry out the work regarding the removal?

"A. In order to get together and to please Mr. Del Moral we offered to put a post of 60 feet and a little bit further from where the tower is now, that is, toward the south, that is, looking for the distance with the other post, since, if he was going to level it, that hill was about 13 feet high.

"Q. Would the placing of that post which you proposed interfere with the levelling of the ground?

"A. No, sir, that is why we proposed a sixty-foot pole.

"Q. Would it interfere with any levelling of the ground made thereabouts by Mr. De Moral?

"A. No, sir.

"Q. Did Mr. Del Moral accept this?
"A. No, sir.
"Q. He refused?
"A. Yes, sir."

The evidence, in our opinion, shows that the placing of the tower in the place designated by Mr. Del Moral would make the use of the easement, constituted by the contract of March 9, 1927, impossible. The laws in force at the time a contract is entered into form a part of that contract. It is true that Mr. Del Moral reserved to himself the right, recognized by law, to demand that the grantee-company change the tower to another place in the same course from the place where it now is, when said change should be necessary to level the land. However, this right cannot be used arbitrarily nor in such a manner as to impair or destroy the right of easement granted by the contract itself, but in accordance with the provisions of the Civil Code in the following section:

"Section 481.—The owner of the servient tenement cannot impair, in any manner whatsoever, the use of an established servitude.

"Nevertheless, if by reason of the place originally assigned or of the manner established for the use of the servitude, it shall become too inconvenient to the owner of the servient tenement or prevent him from undertaking works, repairs, or important improvements, it may be changed at his expense, provided he offers another place or manner equally convenient, and no detriment is thereby caused to the owner of the dominant tenement or to those who have a right to the use of the servitude."

The demand that the tower be moved to a place only six feet from the other tower situated near the boundary line of the farm and 453 feet away from the other tower, is practically the same as eliminating the tower in question and destroying completely the right of easement.

The judgment appealed from, inasmuch as it orders the change of the tower and of the transmission line in the arbitrary manner demanded by the appellees is erroneous and not within the law and should be reversed.

Admitting the existence and validity of the contract of March 27, 1927, the complainants are bound by their stipulations to embody it in a public deed, which they were required to do by the grantee of the easement. The lower court erred therefore in dismissing the cross-complaint.

For the foregoing reasons the judgment rendered by the District Court of Mayagüez on June 17, 1935, is reversed and in its stead another should be rendered dismissing the complaint and sustaining the cross-complaint of the Mayagüez Light, Power & Ice Co., Inc., and ordering the complainants-appellees to execute a public deed granting an easement to the Mayagüez Light, Power & Ice Co., Inc., according to the terms of the contract of March 27, 1927. The validity and legal existence of the easement contract having been decreed, and consequently those of the agreement entered into by the Mayagüez Light, Power & Ice Co., Inc., obligating itself to remove the post from the place where it is now installed to the place designated by the other party, if it should be in the same course as at present, if it should comply with the legal provisions on the subject matter, and if it does not impede the use and enjoyment of the easement, the case should be remanded to the lower court for new and further proceedings not inconsistent with this opinion, for the purpose of determining the location of the post in question at a place and in such a manner as may be compatible with the law and the rights of both of the litigants. All without any special award of costs.

Mr. Chief Justice Del Toro took no part in the decision of this case.